UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| PATRICK S., <br><br> Plaintiff, <br><br> v. <br><br> FRANK BISIGNANO, Commissioner of the Social Security Administration, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION DENYING DISABILITY BENEFITS** <br><br> Case No. 2:24-cv-00886 <br><br> Magistrate Judge Daphne A. Oberg |

Patrick S.[1] brought this action for judicial review of the denial of his application for disability insurance benefits and supplemental security income by the Commissioner of the Social Security Administration.[2] The Administrative Law Judge (ALJ) who addressed Mr. S.'s application determined he did not qualify as disabled.[3] Mr. S. argues the ALJ erred by failing to properly consider a treating provider's medical

---

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in court orders in certain cases, including social security cases, the court refers to the plaintiff by first name and last initial only.

[2] (*See* Compl., Doc. No. 1.)

[3] (Certified Tr. of Admin. R. (Tr.) 17–29, Doc. No. 11.)

opinions.[4]  Because the ALJ applied the correct legal standards and substantial evidence supports his findings, the Commissioner's decision is affirmed.[5]

## STANDARD OF REVIEW

Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code provide for judicial review of the Commissioner's final decision.  This court reviews the ALJ's decision to determine whether substantial evidence supports his factual findings and whether he applied the correct legal standards.[6]  "[F]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."[7]

An ALJ's factual findings are "conclusive if supported by substantial evidence."[8] Although the evidentiary sufficiency threshold for substantial evidence is "not high," it is "more than a mere scintilla."[9]  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[10]  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an

---

[4] (Opening Br. 8, 10, Doc. No. 15.)

[5] The parties consented to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure.  (Doc. No. 5.)

[6] See 42 U.S.C. § 405(g); Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007).

[7] Jensen v. Barnhart, 436 F.3d 1163, 1165 (10th Cir. 2005) (citation omitted).

[8] Biestek v. Berryhill, 587 U.S. 97, 102 (2019) (internal quotation marks omitted).

[9] Id. at 103 (citation omitted).

[10] Id. (citation omitted).

administrative agency's findings from being supported by substantial evidence."[11] And the court may not reweigh the evidence nor substitute its judgment for that of the ALJ.[12]

## APPLICABLE LAW

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" expected to result in death or last for at least twelve consecutive months.[13] An individual is considered disabled only if his impairments are so severe, he cannot perform his past work or "any other kind of substantial gainful work."[14]

In determining whether a claimant qualifies as disabled, the ALJ uses a five-step sequential evaluation, considering whether:

1) the claimant is engaged in substantial gainful activity;

2) he has a severe medically determinable physical or mental impairment;

3) the impairment is equivalent to an impairment precluding substantial gainful activity (listed in the appendix of the relevant disability regulation);

4) he has the residual functional capacity to perform past relevant work; and

---

[11] *Lax*, 489 F.3d at 1084 (citation omitted).

[12] *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

[13] 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

[14] *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

3

    5) he has the residual functional capacity to perform other work, considering his age, education, and work experience.[15]

In the first four steps, the claimant has the burden of establishing disability.[16] And at step five, the Commissioner must show the claimant retains the ability to perform other work in the national economy.[17]

## PROCEDURAL HISTORY

Mr. S. applied for disability insurance benefits and supplemental security income in November 2021.[18] After an administrative hearing, the ALJ issued a decision, finding Mr. S. not disabled and denying benefits.[19]

At step two of the sequential evaluation, the ALJ found Mr. S. had the severe impairments of major depressive disorder, bipolar disorder, generalized anxiety disorder, and borderline personality disorder.[20] The ALJ also determined Mr. S.'s right knee impairment, obstructive sleep apnea, and obesity were nonsevere impairments.[21]

---

[15] *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).

[16] *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).

[17] *Id.*

[18] (*See* Tr. 17, 215–27.)

[19] (Tr. 17–29.)

[20] (Tr. 20.)

[21] (*Id.*)

At step three, the ALJ concluded these impairments did not meet or medically equal an impairment listing.[22]

The ALJ then found Mr. S. had the residual functional capacity to perform "a full range of work at all exertional levels" with certain nonexertional limitations:

> he can perform simple, goal-oriented but not assembly line-paced work; he can occasionally interact with co-workers and supervisors; he can have brief and superficial interaction with the general public; he can adapt to routine changes in the work place; and he can make simple workplace [judgments].[23]

At step four, based on this residual functional capacity assessment and the testimony of a vocational expert, the ALJ found Mr. S. could not perform past work.[24] But at step five, based on the expert's testimony, the ALJ found Mr. S. capable of other jobs in the national economy.[25] Accordingly, the ALJ found Mr. S. not disabled and denied his claims.[26] This decision became final when the Appeals Council denied Mr. S.'s request for review.[27]

---

[22] (Tr. 20–22.)

[23] (Tr. 22.)

[24] (Tr. 27.)

[25] (Tr. 27–28.)

[26] (Tr. 28–29.)

[27] (Tr. 1–3.)

## ANALYSIS

Mr. S. raises a single claim of error: he argues the ALJ failed to properly consider medical opinions from a treating provider, Dr. Richard Potts.[28]

A. <u>Legal Standards</u>

A claimant's residual functional capacity (RFC) is the most he can do in a work setting considering his limitations.[29] In assessing RFC, the ALJ considers "the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."[30] The ALJ considers all relevant medical and other evidence in the record.[31]

In determining a claimant's RFC, an ALJ must assess the persuasiveness of medical opinion evidence based on the following factors: (1) supportability (the objective medical evidence and supporting explanations presented by the medical source); (2) the consistency of the opinion with evidence from other medical and nonmedical sources; (3) the relationship with the claimant (including its length, frequency, purpose, and extent—and whether it was an examining relationship); (4) any specialization; and

---

[28] (Opening Br. 8, 10, Doc. No. 15.)

[29] *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); SSR 96-8p, 1996 SSR LEXIS 5, at *1–2 (July 2, 1996).

[30] SSR 96-8p, 1996 SSR LEXIS 5, at *5.

[31] *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

(5) any other relevant factors.[32] The most important factors are supportability and consistency—the ALJ must explain how he evaluated both factors.[33] When a source provides multiple medical opinions, the ALJ may address them collectively, in a single analysis; he need not articulate how he considered individual opinions from the same source.[34]

   B. <u>Dr. Potts' Opinions and the ALJ's Findings</u>

Dr. Potts provided medical opinions dated December 2021 and June 2023.[35] In December 2021, Dr. Potts indicated Mr. S. had marked limitations in understanding, remembering, and carrying out "short, simple instructions," and extreme limitations in all other areas of work-related mental functioning.[36] He explained Mr. S.'s bipolar disorder and psychosis "severely affects his ability to function, stay focused, and trust others' instructions."[37] He also stated Mr. S.'s functioning was "extremely affected" by his diagnoses, he could not function in a work setting, he had "extreme difficulty" interacting with the public, and he was unable to deal with stress under any circumstances.[38] Dr.

---

[32] *Id.* §§ 404.1520c(b), (c)(1)–(5), 416.920c(b), (c)(1)–5).

[33] *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2).

[34] *Id.* §§ 404.1520c(b)(1), 416.920c(b)(1).

[35] (Tr. 459–61, 1016–18.)

[36] (Tr. 459–60.)

[37] (*Id.*)

[38] (Tr. 460.)

7

Potts noted Mr. S. had "severe paranoia and mood dysregulation," and his paranoia "led to suicidal tendencies and self-harm including cutting."[39]

In June 2023, Dr. Potts indicated Mr. S. had a marked limitation in interacting appropriately with supervisors and extreme limitations in all areas.[40] Dr. Potts based his assessment on a clinical interview and "additional observations from [Mr. S.'s] spouse and family."[41] According to Dr. Potts, Mr. S.'s impairments affected his decision-making, and Mr. S. "need[ed] to have guidance" or he would "start[] to break down."[42] Dr. Potts also concluded Mr. S. was "unable to manage moods particularly under stressful conditions sometimes triggering psychosis."[43]

The ALJ considered both of Dr. Potts' opinions and found them "generally unpersuasive."[44] Although the ALJ acknowledged Dr. Potts offered "some explanation for the limitations given in these checkbox forms," he concluded "the terse and vague explanations given do not justify or fully support the 'marked' and 'extreme' limitations opined in every aspect of mental functioning."[45] The ALJ also found Dr. Potts' opinions "inconsistent with treatment notes from health care providers, which show[] the claimant

---

[39] (*Id.*)

[40] (Tr. 1016–17.)

[41] (*Id.*)

[42] (Tr. 1017.)

[43] (*Id.*)

[44] (Tr. 26.)

[45] (*Id.*)

to generally have good symptom control with medications and to have essentially normal functioning on mental status examinations."[46]

C. Discussion

Mr. S. contends the ALJ failed to adequately explain his findings regarding the supportability and consistency of Dr. Potts' opinions.[47] He also contends the ALJ ignored evidence consistent with Dr. Potts' opinions.[48]

As explained below, the ALJ adequately articulated the basis for his supportability and consistency findings, and those findings are supported by substantial evidence. Further, the record shows the ALJ considered all the evidence. Therefore, Mr. S. has demonstrated no error in the ALJ's assessment of Dr. Potts' opinions.

1. Supportability

"[A] supportability inquiry examines how well a medical source supported and explained their opinion."[49] "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinion(s) . . . will be."[50]

---

[46] (*Id.* (citing Tr. 855–911, 953–990).)

[47] (*See* Opening Br. 14–17, 20–21, Doc. No. 15.)

[48] (*See id.* at 17–20.)

[49] *S.E.H. v. Kijakazi*, No. 21-cv-01845, 2022 U.S. Dist. LEXIS 185739, at *9 (D. Colo. Oct. 11, 2022) (unpublished).

[50] 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

The ALJ found Dr. Potts gave "terse and vague explanations" which did not fully support the opined marked and extreme limitations in every aspect of mental functioning.[51] Mr. S. asserts this characterization is inaccurate, and he complains that the ALJ did not explain what was terse or vague about Dr. Potts' explanations.[52] But the ALJ's articulation is sufficient to allow the court to follow his reasoning, and his description of Dr. Potts' explanations as "terse" and "vague" is consistent with the record.

For example, in December 2021, Dr. Potts provided only a one-sentence explanation for assessing marked and extreme limitations in five separate "work-related mental activities."[53] The listed activities included understanding, remembering, and carrying out both simple and detailed instructions, and making judgments on simple work-related decisions.[54] Dr. Potts stated Mr. S.'s bipolar disorder and psychosis "severely affect[ed] his ability to function, stay focused, and trust others' instructions."[55] But this explanation did not specifically address work-related decision making (one of the listed areas), nor did it distinguish between simple and detailed instructions. And the generic reference to Mr. S.'s "ability to function" is reasonably characterized as vague.

---

[51] (Tr. 26.)

[52] (Opening Br. 15–16, Doc. No. 15.)

[53] (Tr. 459.)

[54] (*Id.*)

[55] (*Id.*)

Similarly, Dr. Potts provided only a two-sentence explanation for assessing extreme limitations in five activities relating to interacting with others.[56] The listed activities included interacting appropriately with the public, supervisors, and coworkers; responding appropriately to work pressures in a usual work setting; and responding appropriately to changes in a routine work setting.[57] Dr. Potts stated Mr. S.'s functioning in these areas was "extremely affected by his diagnosis," Mr. S. could not "function in a work setting," and he had "extreme difficulty interacting with the public."[58] But Dr. Potts did not address interaction with supervisors or co-workers—two of the listed activities. And, again, Dr. Potts' generic reference to an inability to function is properly characterized as vague.

Dr. Potts' explanations for his June 2023 opinions are likewise deficient. He assessed marked and extreme limitations in the same ten work-related mental activities, supported only by the following brief statement: "Clinical interview and additional observations from spouse and family."[59] This statement is reasonably characterized as terse and vague, where it provides no explanation for the opined limitations in specific areas. And as the Commissioner notes, Dr. Potts' underlying treatment notes are not in the administrative record—meaning no further explanation based on those records is

---

[56] (Tr. 460.)

[57] (*Id.*)

[58] (*Id.*)

[59] (Tr. 1016–17.)

available.[60] Dr. Potts also listed "decision making" and "mood management" in the section of the form asking about "other capabilities affected by the impairment."[61] But he also describes Mr. S.'s limitations in these areas in vague terms. For example, he states Mr. S. "needs to have guidance or [he] starts to break down," and is "unable to manage moods particularly under stressful conditions[,] sometimes triggering psychosis."[62] Further, it is not apparent how these limitations correspond to Dr. Potts' opinion regarding marked or extreme limitations in the check-box portion of the form.

In sum, the ALJ fairly characterized Dr. Potts' explanations for the opined limitations as terse and vague. Based on this assessment, the ALJ reasonably concluded Dr. Potts' explanations did not fully support his opinion that Mr. S. had marked or extreme limitations in all work-related mental activities. In other words, the ALJ adequately articulated his supportability finding, and his finding is supported by substantial evidence.

2. Consistency

Consistency is "an all-encompassing inquiry that focuses on how well a medical source opinion is supported, or not supported, by the entire record."[63] "The more consistent a medical opinion[] . . . is with the evidence from other medical sources and

---

[60] (*See* Comm'r's Br. 9, Doc. No. 18.)

[61] (Tr. 1017.)

[62] (*Id.*)

[63] *S.E.H.*, 2022 U.S. Dist. LEXIS 185739, at *9 (internal quotation marks omitted).

nonmedical sources in the claim, the more persuasive the medical opinion[] . . . will be."[64]

The ALJ found Dr. Potts' opinions regarding marked and extreme limitations "inconsistent with treatment notes from health care providers, which shows the claimant to generally have good symptom control with medications and to have essentially normal functioning on mental status examinations."[65] The ALJ cited hearing exhibits 5F, 6F, and 9F, which are office treatment records from Utah Valley Psychiatry and Counseling from September 2020 through June 2022.[66] Mr. S. asserts the ALJ's explanation is inadequate because the ALJ does not identify specific treatment notes inconsistent with Dr. Potts' opinions.[67] He also asserts the ALJ mischaracterized the treatment records and ignored records showing abnormal mental status examinations and poor symptom control.[68]

Substantial evidence in the cited records supports the ALJ's assessment. Numerous mental status examinations in these records indicate Mr. S. was appropriately dressed and groomed, had intact memory, normal speech, a congruent but anxious mood, logical and goal-directed thought processes, intact associations,

---

[64] 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

[65] (Tr. 26.)

[66] (See Tr. 855–888 (exhibit 5F); Tr. 889–911 (exhibit 6F); Tr. 953–990 (exhibit 9F).)

[67] (Opening Br. 17, 19–20, Doc. No. 15.)

[68] (Id. at 17–20.)

non-psychotic thought content, grossly intact attention, and fair insight and judgment.[69] The ALJ reasonably characterized these mental status examinations as "essentially normal."[70] Records throughout this period also show Mr. S. reported improvement in his symptoms due to medication and psychotherapy.[71] As Mr. S. notes, on some occasions he reported unwanted side effects or difficulty controlling symptoms, and his medications were adjusted.[72] But these reports coincided with largely normal mental status examinations.[73] Overall, these records support the ALJ's finding that Mr. S. "generally [had] good symptom control with medications."[74] The ALJ reasonably found these treatment records inconsistent with Dr. Potts' assessment of marked and extreme limitations in all areas of mental functioning. While some contrary evidence is present, the cited treatment records contain substantial evidence (more than a "scintilla") supporting the ALJ's consistency finding.[75]

Further, Mr. S. identifies no authority supporting the proposition that the ALJ was required to cite specific pages of the medical records he relied on. An ALJ need only "provide an explanation that allows the reviewing court to follow his reasoning and

---

[69] (Tr. 865, 873, 877–78, 880–82, 884, 899, 904–05, 909, 974, 979, 984, 989.)

[70] (Tr. 26.)

[71] (Tr. 864, 872, 881, 885, 888, 982.)

[72] (Tr. 876, 879, 972, 977, 987.)

[73] (Tr. 877–78, 880, 974, 979, 989.)

[74] (Tr. 26.)

[75] See Biestek, 587 U.S. at 103.

communicates how he considered" consistency and supportability.[76]  Here, the basis for the ALJ's consistency findings is apparent from a review of the records cited, and the ALJ's explanation is sufficient to allow the court to follow his reasoning.  Moreover, in another portion of the decision, the ALJ cited specific records in concluding Mr. S.'s mental status examinations were largely normal.[77]  Under these circumstances, the ALJ adequately articulated his evaluation of consistency.

Finally, Mr. S.'s assertion that the ALJ "ignored" evidence is unfounded.[78]  Mr. S. claims the ALJ failed to consider treatment records from nine visits between October 2021 and June 2022 in addressing the consistency of Dr. Potts' opinions.[79]  But the ALJ cited the exhibits containing these records in addressing the consistency factor.[80]  And the ALJ specifically discussed many of these same visits in another portion of the decision summarizing Mr. S.'s treatment history.[81]  The record demonstrates the ALJ considered this evidence.  The fact that Mr. S. disagrees with the ALJ's evaluation of

---

[76] *Zambrano v. Kijakazi*, No. 1:20-1356, 2022 U.S. Dist. LEXIS 96466, at *14 (D.N.M. May 31, 2022) (unpublished).

[77] (Tr. 24 (citing Tr. 865, 869 (exhibit 5F/11, 15); Tr. 899, 904, 909 (exhibit 6F/11, 16, 21); Tr. 963, 968, 974, 979, 984 (exhibit 9F/11, 16, 22, 27, 32)).)

[78] (*See* Opening Br. 17, Doc. No. 15.)

[79] (*See id.* at 17–19 (citing various records from exhibits 5F, 6F, 9F).)

[80] (Tr. 26 (citing exhibits 5F, 6F, 9F).)

[81] (Tr. 24 (discussing treatment records from December 2021 and February, April, and May 2022).)

this evidence does not establish error.  As discussed above, the treatment records the ALJ cited contain substantial evidence supporting his findings.

Because the ALJ adequately articulated how he considered the supportability and consistency of Dr. Potts' opinions, and his findings are supported by substantial evidence, Mr. S. has demonstrated no error in the ALJ's evaluation of these opinions. And where Mr. S. raises no other claim of error, the Commissioner's decision must be affirmed.

## CONCLUSION

The Commissioner's decision is affirmed.

DATED this 3rd day of March, 2026.

BY THE COURT:

_Daphne A. Oberg_
Daphne A. Oberg
United States Magistrate Judge
